UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(CAMDEN VICINAGE)

LEWIS G. ADLER, ESQUIRE
26 NEWTON AVENUE
WOODBURY, NJ 08096
(856)845-1968
ATTORNEY FOR PLAINTIFF
_____

Edward Rainas, 4th :
individually and as a class representative :
On behalf of others similarly situated    :    Case No.
        Plaintiff,                              :    1:09-cv-2699 (JHR)(KMW)
        vs.                                      :
                                                 :    CIVIL ACTION
City of Wildwood and the Wildwood         :
Police Department,                        :
Officer Ricardo Nizario                   :
John Does 1-100                           :
                                                 :    Certification on Counsel
        Defendant.                               :
_____

**I, Lewis G. Adler, Esquire,** of full age hereby certify to the following:

1. This certification is being offered in support the Plaintiff brief in opposition to the Defendants motion to dismiss.

2. I have attached true copies of the following exhibits:

    a. Unpublished Decision of *State v. Cooney*, 2006 WL 1028812 (App Div 2006);

    b. Letter dated November 18,1998 from Attorney General Peter Verniero to all municipal prosecutors.

   c. Letter dated January 6, 2003 from Deputy Attorney Stephen Monson to all municipal prosecutors.

   d. Letter dated January 8, 2003 from Deputy Attorney Stephen Monson to all municipal prosecutors.

   e. Wildwood Ordinance 3-1.

I hereby certify that the foregoing statements made by me are true.  I realize that if any of these statements are willfully false, I am subject to punishment.

          _/s/Lewis G. Adler, Esquire_____
DATED: 9/21/09      Lewis G. Adler, Esquire

# Exhibit A

Not Reported in A.2dNot Reported in A.2d, 2006 WL 1028812 (N.J.Super.A.D.)(Cite as: 2006 WL 1028812 (N.J.Super.A.D.))

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of New Jersey, Appellate Division.

STATE of New Jersey, Plaintiff-Respondent
v.
Nicholas COONEY, Defendant-Appellant.

Submitted March 21, 2006.
Decided April 20, 2006.

SYNOPSIS

Background: Defendant was convicted in the Carteret Municipal Court of violating municipal ordinance prohibiting disorderly conduct. On de novo appeal, the Superior Court, Law Division, Middlesex County, affirmed. Defendant appealed.

Holding: The Superior Court, Appellate Division, held that municipal ordinance prohibiting riots, breaches of peace, and disorderly conduct was preempted by criminal code provision prohibiting same.

Reversed.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. 8-2005.

Nicholas Cooney, appellant, pro se.

Slavin & Morse, attorneys for respondent (Kevin Morse, on the brief).

Before Judges SKILLMAN and SABATINO.

PER CURIAM.

*1 Defendant was found guilty in the Carteret Municipal Court of violating a municipal ordinance prohibiting disorderly conduct and fined $500. On a de novo appeal based on the municipal court record, the Law Division also found defendant guilty of violating the ordinance and reimposed the same sentence imposed by the municipal court.

On an initial review of defendant's appeal, this court questioned whether the municipal ordinance under which defendant had been convicted was preempted by the Code of Criminal Justice, N.J.S.A. 2C:1-1 to 104-9. Consequently, we invited the parties to submit supplemental briefs dealing with this issue. Both parties subsequently filed supplemental briefs.

We conclude that the Carteret municipal ordinance under which defendant was convicted is preempted by the Code. Therefore, we reverse defendant's conviction.

N.J.S.A. 2C:1-5(d) provides: Notwithstanding any other provision of law, the local governmental units of this State may neither enact nor enforce any ordinance or other local law or regulation conflicting with, or preempted by, any provision of this code or with any policy of this State expressed by this code, whether that policy be expressed by inclusion of a provision in the code or by exclusion of that subject from the code.

This provision reflects a general legislative intent to exclude local legislation from areas covered by the Code of Criminal Justice. State v. Crawley, 90 N.J. 241, 251, 447 A.2d 565 (1982); see also State v. Paserchia, 356 N.J.Super. 461, 464-66, 813 A.2d 556 (App.Div.2003); State v. Felder, 329 N.J.Super. 471, 473-75, 748 A.2d 163 (App.Div.2000).

In Paserchia, we held that a municipal ordinance prohibiting disorderly conduct was preempted by the Code. The ordinance involved in that case provided:

> No person shall disturb, by any violent, abusive, loud or threatening language, or disorderly or indecent behavior of any kind, any lawful congregation or assembly of any kind or description in any place or building within the Township.
>
> [356 N.J.Super. at 464, 813 A.2d 556.]

In concluding that this ordinance was preempted by the provisions of N.J.S.A. 2C:33-2 dealing with disorderly conduct, we stated: Our review of the West Orange ordinance and N.J.S.A. 2C:33-2 convinces us that both provisions address the same activity.

Furthermore, an examination of Chapter 33 of the Code reveals a policy to comprehensively address street behavior and other conduct in public places which may disturb citizens and disrupt peaceful society. N.J.S.A. 2C:33-1 to -28 addresses offenses against the public order, health and decency. It proscribes rioting and failure to disperse (N.J.S.A. 2C:33-1), harassment (N.J.S.A. 2C:33-4), obstructing highways and other public passages (N.J.S.A. 2C:33-7), disrupting meetings and processions (N.J.S .A. 2C:33-8), and disorderly conduct (N.J.S.A. 2C:33-2). [Id. at 466, 813 A.2d 556.]

The Carteret ordinance prohibiting rioting, breaches of the peace and disorderly conduct is substantially the same as the West Orange ordinance that we held to be preempted by the Code in Paserchia. The Carteret ordinance provides:

> No person or persons shall make, aid, assign, create or cause to be created any riot, breach of peace or disturbance or be guilty of any disorderly conduct or open drunkenness or drink intoxicating liquors in the open streets or highways of the Borough of Carteret or other quasi-public open places in the borough.
>
> [Borough of Carteret, N.J., Code 168-3(a).]

The Code contains express provisions dealing with rioting, N.J.S.A. 2C:33-1, and disorderly conduct, N.J.S.A. 2C:33-2. Therefore, the parts of the Carteret ordinance prohibiting riots, breaches of the peace and disorderly conduct that defendant was found to have violated are preempted by the Code.[1]

FN1.
Accordingly, defendant's conviction is reversed.

Not Reported in A.2d, 2006 WL 1028812 (N.J.Super.A.D.)

END OF DOCUMENT

---

[1] We express no opinion regarding the validity of the parts of the ordinance prohibiting public drunkenness and the consumption of alcoholic beverages in public places. See N.J.S.A. 2C:33-15 to -17.

# Exhibit B



# State of New Jersey
DEPARTMENT OF LAW AND PUBLIC SAFETY
OFFICE OF THE ATTORNEY GENERAL
CN 080
TRENTON, NJ 08625-0080
(609) 292-4925

CHRISTINE TODD WHITMAN
*Governor*

PETER VERNIERO
*Attorney General*

November 18, 1998

TO ALL MUNICIPAL COURT PROSECUTORS

Re: Plea Agreements in Municipal Courts

Dear Municipal Prosecutor:

I have been advised that there is an increasingly widespread practice developing in municipal court where municipal prosecutors are downgrading criminal or traffic offenses from State statutes to municipal ordinance violations where State law has pre-empted the field. For reasons expressed below, this practice should be discontinued immediately.

According to information my office has received regarding this downgrade plea agreement procedure, defendants, in some cases, are assessed fines greater than permitted by State statute. An incentive for some defendants to accept this plea agreement with its increased fines is the fact that the defendants are informed that if they accept the plea offer they will avoid the imposition of other statutory penalties or administrative actions, such as motor vehicle points, *N.J.A.C.* 13:19-10 *et seq*, and administrative license supervision, *N.J.A.C.* 13:19-11 *et seq*.

In most cases, State law has pre-empted the field, thus precluding the municipality from enacting an ordinance that provides for a sanction proscribing certain conduct. Our courts have defined the circumstances when State law pre-empts the authority of a municipality to enact such a municipal ordinance. The essential factors are:

1. Does the ordinance conflict with the state law, either because of conflicting policies, or operation effect, that is, does the ordinance forbid what the Legislature has permitted?

2. Was the state law intended expressly or impliedly to be exclusive in the field?

3. Does the subject matter reflect a need for uniformity?

4. Is the State scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?

5. Does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the Legislature?

*Overlook Terrace Management Corp. v. West New York Rent Control Bd.*, 71 *N.J.* 451, 460-462 (1976). See also *State v. Crawley*, 90 *N.J.* 241, 248, 250 (1982); *Summer v. Teaneck Twp.*, 53 *N.J.* 548, 554-55 (1969); *State v. Ulesky*, 54 *N.J.* 26, 29 (1969); *Kennedy v. Newark*, 29 *N.J.* 178 (1959).

If a municipal prosecutor has concerns whether State law has pre-empted a particular area of the law, the municipal prosecutor should discuss the matter with the County Prosecutor's Office or with the Prosecutors and Police Bureau within the Division of Criminal Justice. The municipal prosecutor, as an officer of the court, cannot simply ignore this obligation. The failure of the municipal prosecutor to take appropriate action in these matters may result in disciplinary action and possible sanction by the State Supreme Court. See *In the Matter of Norton and Kress*, 128 *N.J.* 520 (1992); *In the Matter of Segal*, 140 *N.J.* 468 (1992).

In addition, there must be a nexus between the original charge and the new charge. The factual basis for the plea must establish that the elements of the offense have been committed by the defendant. Pursuant to *R.* 7:6-2, a factual basis for a plea must be placed on the record. It is the responsibility of the prosecutor to establish this factual basis on the record. In addition, the prosecutor must state on the record the reasons for the downgraded plea agreement. *State v. Taylor*, 80 *N.J.* 353, 361-62, 403 *A.2d* 889 (1979); *State v. Sainz*, 107 *N.J.* 283, 293 (1987).

The responsibility of offering a plea agreement rests exclusively with the prosecutor. This is not a function of a court. In no case should a blanket plea offer be distributed or mailed to all defendants by either the court or the municipal prosecutor. It is important for the prosecutor to keep in mind that a "prosecutor is not an ordinary advocate. Rather, the prosecutor has an obligation to defendants, the State and the public to see that justice is done ...." [Comment, *Guidelines for Operation of Plea Agreements in the Municipal Courts of New Jersey*, Appendix to Part VII court Rules. Guideline].

2

Pursuant to the provisions of the Criminal Justice Act of 1970, *N.J.S.A.* 52:17B-112, and the provisions of *N.J.S.A.* 2B:12-27, I direct that each of you adhere to the provisions of this letter. Thank you for your continued cooperation.

Sincerely yours,

*Peter Verniero*

Peter Verniero
Attorney General

cc: Paul H. Zoubek, Director
Debra L. Stone, Deputy Director
Hon. James Ciancia, Director, Administrative Office of the Courts
Dennis L. Bliss, Assistant Director
  Municipal Court Services, Administrative Office of the Courts
All County Prosecutors
DAG Greta Gooden-Brown, Chief
  Prosecutors and Police Bureau
William John Kearns, Jr., General Counsel
  N.J. State League of Municipalities

# Exhibit C



## State of New Jersey
### DEPARTMENT OF LAW AND PUBLIC SAFETY
### DIVISION OF CRIMINAL JUSTICE

JOHN J. FARMER, JR.
*Attorney General*

PO Box 085
TRENTON, NJ 08625-0085
TELEPHONE (609) 984-6500

KATHRYN FLICKER
*Director*

## MEMORANDUM

TO: Municipal Prosecutor Supervisors (Attached Distribution List)

FROM: Deputy Attorney General Stephen Monson, Prosecutors Supervision & Coordination Bureau

DATE: January 6, 2003

SUBJECT: State (Twp. W. Orange) v. Paserchia, Dkt. A-2652-01, decided 1-6-2003

    Attached is an unreported decision (See, *R*. 1:36-3), issued this date, by the Appellate Division, State (Twp. W. Orange) v. Paserchia, Dkt. A-2652-01. In this case, the Appellate Division reversed the defendant's conviction for a violation of a "disorderly conduct" municipal ordinance, on the grounds that a State statute, *N.J.S.A.* 2C:33-2 preempted the ordinance.

    This decision is significant in that it underscores the view expressed in the November 18, 1998 Attorney General Directive pertaining to "Plea Agreements in Municipal Courts." Copy attached. Accordingly, please review and distribute this opinion, and the Attorney General's Directive it to the Municipal Prosecutors in your county. Please remind prosecutors that disposition of offenses as municipal ordinance violations is permissible only in limited circumstances. State (Twp. W. Orange) v. Paserchia, s.o. at pp. 5-8, citing, State v. Crawley, 90 *N.J.* 241 (1982); State v. Felder, 329 *N.J. Super.* 471 (App. Div. 2000); State v. Meyer, 212 *N.J. Super.* 1 (App. Div. 1986); Dolecky v. Boro. Riverton, 223 *N.J. Super.* 354 (App. Div. 1987).

Attachments: Slip Opinion, AG Directive Nov. 18, 1998.

c:    DAG Jessica S. Oppenheim, Chief Prosecutors Supervision & Coordination Bureau
      DAG Tom Fisken, Dep. Chief, Prosecutors Supervision & Coordination Bureau
      DAG Marie Pirog, Prosecutors Supervision & Coordination Bureau
      DAG Christine Hoffman, Prosecutors Supervision & Coordination Bureau
      DAG Neil Magnus, Division of Law
      DAG Tina Frost, OAG, Office State Police Affairs



*New Jersey Is An Equal Opportunity Employer*

Municipal Prosecutor Supervisors, State (Twp. W. Orange) v. Paserchia        Page 2

| County | Supervisor | County Prosecutor |
|---|---|---|
| Atlantic | Murray Talasnik, FAP<br>Jack Lipari, AP | Jeffrey S. Blitz |
| Bergen | Annmarie Cozzi, AP | John L. Molinelli |
| Burlington | Raymond Milavsky, FAP | Robert D. Bernardi |
| Camden | Joshua Ottenberg, AP | Vincent P. Sarubbi |
| Cape May | John Molitor, AP | J. David Meyer (Acting) |
| Cumberland | Linda Lawhun, FAP | Arthur J. Marchand |
| Essex | Hilary Brunell, EAP | Donald Campolo (Acting) |
| Gloucester | Michael Curwin, AP | Sean F. Dalton |
| Hudson | Kathleen Coughlin AP | Edward J. De Fazio |
| Hunterdon | Katharine Errickson, AP | Steven Lember FAP (Acting) |
| Mercer | John Jingoli, AP | Daniel G. Giaquinto |
| Middlesex | Nicolas Sewitch, AP | Bruce J. Kaplan |
| Monmouth | Mark Stalford, AP | John Kaye |
| Morris | Brain Kenny, AP | Michael Rubbinaccio |
| Ocean | Thomas Cannavo, AP | Thomas Kelaher |
| Passaic | Dante Mongiardo, AP | James F. Avigliano |
| Salem | Michael Ostrowski, AP | John E. Bergh |
| Somerset | Joseph Rocchietti, AP | Wayne J. Forrest |
| Sussex | Robin Lawrie, AP | Dolores M. Blackburn |
| Union | Kenneth Siegel, AP | Theodore J. Romankow |
| Warren | LeeAnn Cunningham, AP | John G. Laky |
| Div. Law | Neil Magnus, DAG | |
| OAG | Tina Frost, DAG, Office of State Police Affairs | |

# Exhibit D



**State of New Jersey**
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF CRIMINAL JUSTICE
PO Box 085
TRENTON, NJ 08625-0085
TELEPHONE (609) 984-6500

JOHN J. FARMER, JR.
*Attorney General*

KATHRYN FLICKER
*Director*

## MEMORANDUM

TO: Municipal Prosecutor Supervisors (Attached Distribution List)

FROM: Deputy Attorney General Stephen Monson
Prosecutors Supervision & Coordination Bureau

DATE: January 8, 2003

SUBJECT: <u>State (Twp. W. Orange) v. Paserchia</u>, ___ *N.J. Super.* ___ (App. Div. 2003) decided 1-6-2003

    On January 6, 2003, this office informed you about the above Appellate Division decision and indicated it was an unreported decision (See, *R.* 1:36-3). We have subsequently learned that this opinion was approved for publication. A copy of the reported decision is attached.

    In this case, the Appellate Division reversed the defendant's conviction for a violation of a "disorderly conduct" municipal ordinance, on the grounds that a State statute, *N.J.S.A.* 2C:33-2 preempted the ordinance. As we originally noted, this decision is significant in that it underscores the view expressed in the November 18, 1998 Attorney General Directive pertaining to "Plea Agreements in Municipal Courts." Copy attached. Accordingly, please review and distribute this opinion, and the Attorney General's Directive it to the Municipal Prosecutors in your county. Prosecutors should be reminded that disposition of offenses as municipal ordinance violations is permissible only in limited circumstances. <u>State (Twp. W. Orange) v. Paserchia</u>, ___ *N.J. Super.* at ___ - ___, s.o. at pp. 5-8, citing, <u>State v. Crawley</u>, 90 *N.J.* 241 (1982); <u>State v. Felder</u>, 329 *N.J. Super.* 471 (App. Div. 2000); <u>State v. Meyer</u>, 212 *N.J. Super.* 1 (App. Div. 1986); <u>Dolecky v. Boro. Riverton</u>, 223 *N.J. Super.* 354 (App. Div. 1987).

Attachments: Reported Opinion, AG Directive Nov. 18, 1998.

c: DAG Jessica S. Oppenheim, Chief Prosecutors Supervision & Coordination Bureau
DAG Tom Fisken, Dep. Chief, Prosecutors Supervision & Coordination Bureau
DAG Marie Pirog, Prosecutors Supervision & Coordination Bureau
DAG Christine Hoffman, Prosecutors Supervision & Coordination Bureau



*New Jersey Is An Equal Opportunity Employer*

# Exhibit E

# CHAPTER III POLICE REGULATIONS.

## 3-1 CONDUCT OF PERSONS; PROHIBITED ACTS.

a. No person shall utter loud, offensive, indecent or profane language nor address nor make audible and offensive remarks or comments on or to any person passing along or being on or in any of such streets, sidewalks, the boardwalk, public pavilions, public parks, beaches or other public places or on or in any property, public or private, nor obstruct or interfere with any person or persons lawfully being on or in any streets, sidewalks, the boardwalk, public pavilions, public parks, beaches or other public places nor while on or in any highways, sidewalks, the boardwalk, public parks, beaches or other public places, by begging or soliciting alms or by soliciting him or them to hire vehicles, engage boarding or hotel accommodations or purchase tickets of admission to visit or view amusements, shows or exhibitions.

b. No person shall revel, quarrel, brawl or otherwise misbehave in a disorderly manner to the disturbance or annoyance of the peaceable inhabitants of the city nor be guilty of any other disorderly conduct in or on the streets, sidewalks, boardwalk, public pavilions, public parks, beaches or other public places.

c. No person shall keep, manage, maintain, reside in, frequent, resort to or be an inmate of a gambling house, disorderly house or houses of ill fame or permit his or her house, hotel, shop or other building, or place to be used, frequented or occupied by or resorted to by riotous or disorderly persons, gamblers, thieves, vagrants, common mendicants, persons of ill fame or prostitutes.

d. No person shall make or assist in making or take active part in any riot, brawl or unreasonable disturbance of the peace at any house, hotel, shop, store or other building or place, either public or private.

e. No person shall, within the boundaries of the City of Wildwood, carelessly or recklessly drop, throw, cast or strike with any stick, stone, brick, ball or snowball or other missile or projectile of any kind whatsoever, in any manner doing injury to or likely or calculated or intended to do injury to another's person or property.

f. No person shall, while on the public lands, parks or beaches adjacent to the boardwalk or on the public highways in said city, pitch, throw, toss or project any ball, projectile or missile whatsoever, provided that this section shall not be construed to prohibit the playing of games on such portions of said public lands, parks or beaches as shall from time to time be designated by the chief of police, the chairman of the parks and playgrounds committee of the board of commissioners or the captain of the beach patrol as play areas.

g. No person shall take plants or flowers or other things from or mutilate in any manner any property, real or personal, public or private, or write, paste, post or place in any manner any obscene or vulgar words, phrases, language, pictures, drawings, prints, lithographs or characters on any wall, house, fence, signboard, billboard or other structure.

h. No person shall make any indecent or lewd exposure of themselves or peep or look upward through apertures or openings in the boardwalk or other elevated walks in said city while persons are walking or standing thereon.

i. No person shall refuse to obey the orders, directions, whistles, or other signals used by duly constituted police officers and lifeguards.

j. No person shall urinate or defecate except in public, private or quasi-public restroom facilities. Nor shall any person fail to cooperate in maintaining public or quasi-public restrooms and washrooms in a neat and sanitary condition. No person over the age of six (6) years shall enter into or utilize public or quasi-public restrooms and washrooms designated for use by members of the opposite sex.

## 3-1A LOITERING.

### 3-1A.1 Definitions. As used in this section:

a. *Loitering* shall mean remaining idle in essentially one location and shall include the concepts of spending time idle, loafing or walking about aimlessly, and shall also include the colloquial expression "hanging around."

b. *Public place* shall mean any place to which the public has access and shall include any street, highway, road, alley, or sidewalk. It shall also include the front or the neighborhood of any store, shop, restaurant, tavern or other place of business and public grounds, areas, parks, as well as parking lots or other vacant private property not owned by or under the control of the person charged with violating this section, or in the case of a minor, not owned or under the control of his parent or guardian.

c. *Parent* or *guardian* shall mean and include any adult person having care or custody of a minor, whether by reason of blood relationship, the order of any court, or otherwise.

### 3-1A.2 Certain Types of Loitering Prohibited.

No person shall loiter in a public place in such manner as to:

a. Create or cause to be created a danger of a breach of the peace.

b. Create or cause to be created any disturbance or annoyance to the comfort and repose of any person.

c. Obstruct the free passage of pedestrians or vehicles.

d. Obstruct, molest, or interfere with any person lawfully in any public place as defined in subsection 3-1.1 (b). This paragraph shall include the making of unsolicited remarks of an offensive, disgusting or insulting nature or which are calculated to annoy or disturb the person to, or in whose hearing, they are made.

### 3-1A.3 Discretion of Police Officer.

Whenever any police officer shall, in the exercise of reasonable judgment, decide that the presence of any person in any public place is causing or is likely to cause any of the conditions enumerated in subsection 3-1.2, or cause a violation of any other municipal ordinance, he may, if he deems it necessary for the preservation of the public peace and safety, order that person to leave that place. Any person who shall refuse to leave after being ordered to do so by a police officer shall be guilty of a violation of this section.

### 3-1A.4 Loitering by Minors.

No parent or guardian of a minor under the age of 18 years shall knowingly permit that minor to loiter in violation of this section.

### 3-1A.5 Notice of Violation.

Whenever any minor under the age of 18 years is charged with a violation of this section, his parent or guardian shall be notified of this fact by the chief of police or any other person designated to give such notice.

### 3-1A.6 Presumption.

If at any time within 30 days following the giving of notice as provided in subsection 3-1A.5, the minor to whom such notice relates again violates this section, it shall be presumed in the absence of evidence to the contrary that the minor did so with the knowledge and permission of his parent or guardian.

## 3-2 CURFEW FOR MINORS.

### 3-2.1 Definitions. As used in this section:

a. *Juvenile* shall mean an individual who is under the age of 18 years.

b. *Guardian* shall mean a person, other than a parent, to whom legal custody of the juvenile has been given by court order or who is acting in the place of the parent or is responsible for the care and welfare of the juvenile.

c. *Public place* shall mean any place to which the public has access, including but not limited to a public street, road, thoroughfare, sidewalk, bridge, alley, plaza, park, recreation or shopping area, public transportation facility, vehicle used for public transportation, parking lot or any other public building, structure or area.

### 3-2.2 Curfew Established.

No juvenile shall be on any public street or in a public place during the following hours:

a. Between the hours of 1:00 a.m. and 6:00 a.m. on any day during the period from May 16 through September 14 in each year;

b. Between the hours of 11:00 p.m. and 6:00 a.m. of the following day from Sunday at 11:00 p.m. until Friday at 6:00 a.m. during the period from September 15 through May 15 of each year;

c. Between the hours of 12:30 a.m. and 6:00 a.m. on Saturdays and Sundays during the period from September 15 through May 15 of each year; and

d. Notwithstanding the provisions of paragraphs b. and c. hereinabove, no juvenile shall be in the areas designated C-3 on the city zoning map between the hours of 10:00 p.m. and 6:00 a.m. of the following day on any day during the period from September 15 through May 15 of each year.

### 3-2.3 Exceptions.